IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AMERICAN EAGLE MOTORS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COPART OF CONNECTICUT, INC., *et al.*,)<br>)<br>Defendants. ) | Civil Action No. 1:22-cv-656 (RDA/JFA) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Defendant Copart of Connecticut, Inc.'s ("Defendant Copart") Motion to Dismiss for Improper Venue ("Motion") Plaintiff American Eagle Motors, LLC's ("Plaintiff") Complaint. Dkt. 4. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 5), the Court grants the Motion for the following reasons.

I. BACKGROUND

Plaintiff American Eagle Motors, LLC is a Virginia limited liability company that purchases vehicles to repair and resell. Dkt. 1-1 ¶ 2. Defendant German's Auto, Inc. ("Defendant German's Auto") is a North Carolina corporation in the automotive business. *Id.* ¶ 3. Defendant Copart is a Connecticut corporation that provides an online marketplace for users to offer used, wholesale, and repairable vehicles for purchase to other users, either through auction or through the website's "Buy It Now" feature. *Id.* ¶¶ 4, 11. Defendant Copart's "Buy It Now" feature allows

a buyer to purchase a vehicle immediately, without having to compete to purchase it in an auction. *Id.* ¶ 11.

On March 5, 2022, Plaintiff attempted to purchase a 2021 Cadillac Escalade located in Spartanburg, South Carolina that Defendant German's Auto had listed for sale on the Copart website using the "Buy It Now" feature. *Id.* ¶¶ 6-17, 19, 40, Exs. A, C, E.  The vehicle was listed with an estimated retail value of $103,000, but had listed a mistaken sale price of $67, which is what Plaintiff paid (plus $109 in additional fees). *Id.* ¶¶ 12, 15-16, Ex. E.  Shortly afterward, Defendant Copart became aware of the mistake and canceled the sale.[1] *Id.* ¶¶ 20-21.

Subsequently, on May 13, 2022, Plaintiff initiated this lawsuit in the Circuit Court of Fairfax County against Defendants Copart and German's Auto.  Dkt. 1.  Plaintiff brought two counts in her Complaint, the first under Virginia Code § 8.2-716, which requires that "[s]pecific performance may be decreed where the goods are unique or in other proper circumstances," and the second under Virginia Code § 8.2-328, which governs sales by auction.  Dkt. 1-1 ¶¶ 29-42.

At issue in the instant Motion is the applicability of a forum selection clause found in the Member Terms and Conditions to which Defendant Copart asserts Plaintiff agreed to.  Like all other users of Defendant Copart's website, Plaintiff was required to register as a "Member" to buy or sell vehicles through the website.  Dkt. Nos. 1-1, Ex. B; 5 at 3.  When creating an account, a user is required to click a box acknowledging that she has read and understood the Member Terms and Conditions and agrees to be bound by them.  Dkt. 5 at 3.  Plaintiff became a Copart Member

---

[1] Section II.B of the Member Terms and Conditions reads, in pertinent part: "Copart reserves the right to cancel or reverse a sale transaction in the event of fraud, material misrepresentation, or *patent defect* in the Vehicle Description or *bidding information, as determined by Copart in its sole discretion*." Dkt. 5-1, Ex. 1 (emphases added).

on April 10, 2018, and necessarily agreed to the Member Terms and Conditions on that date. Dkt. 5-1 ¶ 6. Plaintiff again accepted the Member Terms and Conditions on October 15, 2022. *Id.*

Those terms, as they existed in October 2020, included a forum selection clause requiring that any and all claims arising out of or related to a vehicle bid or purchase transaction would be brought in the state and county where the vehicle was located at the time the bid was entered or the purchase was consummated. *Id.* ¶ 7. Because the subject vehicle was located in South Carolina, the relevant county and state is Spartanburg County, South Carolina. Dkt. 1-1 ¶¶ 13, 19, 40, Exs. A, C, E.

On June 9, 2022, Plaintiff removed this action from the Circuit Court of Fairfax County to this Court. Dkt. 1. And on June 21, 2022, Defendant Copart filed the instant Motion to Dismiss claiming Improper Venue under Federal Rule of Civil Procedure 12(b)(3), arguing that this Court should dismiss this action because, pursuant to the forum selection clause, the proper venue for this action is Spartanburg, South Carolina. Dkt. 5. Plaintiff has not filed an Opposition to Defendant's Motion, nor has it requested additional time to respond or otherwise indicated a desire to oppose the Motion. "This Court, nevertheless, is obligated to ensure that dismissal is proper even when a motion to dismiss is unopposed." *Adkins v. Beck*, No. 3:20-CV-821-HEH, 2020 WL 7211634, at *1 (E.D. Va. Dec. 7, 2020) (citing *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014)).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(3) allows for a party to move for dismissal for improper venue. Fed. R. Civ. P. 12(b)(3). Where a party moves for dismissal pursuant to a forum selection clause, such motions are "cognizable as motions to dismiss for improper venue." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006). "[B]ecause a

motion under 12(b)(3) is a disfavored 12(b) motion," the Fourth Circuit has held that "a defendant will have to raise the forum selection issue in [its] first responsive pleading, or waive the clause." *Id.*

In considering a 12(b)(3) motion "the court is permitted to consider evidence outside of the pleadings." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365-66 (4th Cir. 2012). To defeat such a motion, the non-movant must make a "prima facie venue showing," and the facts must be viewed "in the light most favorable to the plaintiff." *Id.* at 366 (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).

## III. ANALYSIS

Defendant Copart filed the instant Motion as its first responsive pleading to Plaintiff's Complaint. In its Motion, Defendant Copart argues that venue is improper in the Eastern District of Virginia pursuant to a valid forum selection clause in the governing contract. Defendant Copart explains that when Plaintiff created its Copart account, it entered into a written agreement that any and all claims arising out of or related to a vehicle bid or purchase transaction would be brought in the state and county where the vehicle was located at the time the bid was entered or the purchase was consummated. In the instant case, it is not contested that the proper forum is Spartanburg, South Carolina. Defendant Copart further contends that this Court, in its discretion, should dismiss the instant action because the interest of justice does not warrant transfer. The Court addresses each issue in turn.

A. Whether Plaintiff Entered into a Valid Contract with Defendant

Under Virginia law, the elements of a valid contract are offer, acceptance, and consideration.[2] *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 696 (E.D. Va. 2020) (citing *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995)). In addition, an essential element is "mutuality of assent." *Id.* (quoting *Lacey v. Cardwell*, 216 Va. 212, 223 (1975)). In deciding whether a party assented to a contract's terms, a court "should use an objective standard" and "must consider the assenting 'words or acts, not . . . [the party's] unexpressed state of mind.'" *Id.* (quoting *Phillips v. Mazyck*, 273 Va. 630, 636 (2007)).

Moreover, "a contract does not become less of a contract simply because a party entered into it electronically." *Id.* (citing *A.V. v. iParadigms*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008), *rev'd on other grounds*, 562 F.3d 630 (4th Cir. 2009)). Indeed, "courts have consistently 'recognized that [an] electronic "click" can suffice to signify the acceptance of a contract,' and that '[t]here is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement.'" *Id.* at 697 (quoting *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). This Court has instructed that the appropriate test for determining whether a website's terms constitute a valid contract is whether the user "had actual or constructive knowledge of the site's terms and conditions." *Id.* at 696 (quoting *Capital Concepts, Inc. v. Mountain Corp.*, No. 3:11-CV-00036, 2012 WL 6761880, at *10 (W.D. Va. Dec. 30, 2012)).

In the instant case, Defendant Copart offered the services it provides through its website to Plaintiff and made that offer subject to its Member Terms and Conditions. The type of contract at

---

[2] Plaintiff does not dispute that Virginia law applies to the question of whether Plaintiff entered into a valid contract with Defendant.

5

issue here is a "clickwrap agreement," meaning that Plaintiff was required to check a box acknowledging that it had read and accepted the terms and conditions before creating the account. *Id.* at 696 n.8. A clickwrap agreement differs from a "browsewrap agreement," which does not require a user to click a box or button indicating that he or she agrees to certain terms to use the website, but instead attempts to bind the user to hyperlinked terms simply through using the website. *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 937 (E.D. Va. 2010). A clickwrap agreement also differs from a "sign-in wrap agreement," where a user signs up to use a website and the screen states that the acceptance of the terms and conditions are required to access the site, but the user does not have to read the terms and conditions before signing up. *Melo*, 439 F. Supp. 3d at 696 n.8. Courts tend to "look more favorably upon clickwrap and sign-in wrap agreements than browsewrap agreements." *Id.* Indeed, courts have routinely found clickwrap agreements to be valid, enforceable contracts. *Hosseini v. Upstart Network, Inc.*, No. 19-CV-704, 2020 WL 573126, at *4 (E.D. Va. Feb. 5, 2020) (citing *A.V.*, 544 F. Supp. 2d at 480; *Hancock v. AT&T Co., Inc.*, 701 F.3d 1248. 1256 (10th Cir. 2012); *Kraft Real Estate Inv., LLC v. Homeaway.com, Inc.*, No. 4:08-cv-3788, 2012 WL 220271, at *7 (D.S.C. Jan. 24, 2012)). These courts have concluded that by affirmatively clicking "I Agree," a party demonstrates acceptance of the posted terms. *See, e.g.*, *Kraft Real Estate Inv., LLC*, 2012 WL 220271, at *7.

In the case at bar, the Court finds that Plaintiff had, at the very least, constructive knowledge of the Member Terms and Conditions. By checking a box acknowledging that it had read and accepted the Member Terms and Conditions before creating his account, Plaintiff attested and assented to those terms and conditions, including the forum selection clause contained therein. Accordingly, Plaintiff entered into a valid contract with Defendant.

B. Whether the Contract Contains an Enforceable Forum Selection Clause

Having found that the parties have entered into a valid contract, this Court must next consider if the Member Terms and Conditions contained an enforceable forum selection clause. The forum selection clause at issue here reads in pertinent part:

> A. . . . .  The Member acknowledges and accepts the following as express conditions to Membership with Copart:
>
> > 1. Any action or proceeding arising directly or indirectly out of a vehicle bid or purchase transaction shall be conducted in the state/province and county where the vehicle was located at the time the bid was entered or the purchase was consummated . . . .
> >
> > 2. The Member consents to the forum selection . . . and venue provisions described above.

Dkt. 5-1 ¶ 7.

The Supreme Court has articulated a presumption that a *mandatory*—as opposed to a permissive—forum selection clause is valid and enforceable. *M/S Bremen v. Zapata OffShore Co.*, 407 U.S. 1, 10 (1972); *see also Torres v. SOH Distribution Co.*, No. 3:10-CV-179, 2010 WL 1959248, at *2 (E.D. Va. May 13, 2010) ("Federal law presumes *mandatory* forum selection clauses to be prima facie enforceable for claims within their scope . . . ." (emphasis added)). But this presumption of enforceability is not absolute and may be overcome by a clear showing that enforcement would be "unreasonable under the circumstances." *M/S Bremen*, 407 U.S. at 10. The Fourth Circuit has held that forum selection clauses are unreasonable "if (1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Allen v. Lloyd's*

*of London*, 94 F.3d 923, 928 (4th Cir. 1996) (quoting *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991)).

This Court's analysis is therefore twofold. As an initial matter, the Court must conclude whether the clause is mandatory. *See M/S Bremen*, 407 U.S. at 10. If so, the forum selection clause is presumptively enforceable. *Id.* Next, the Court must determine whether the nonmoving party has rebutted the presumption of enforceability by proving that enforcement of the clause would be unreasonable. *Id.* If the nonmoving party has not met its burden, the Court will be compelled to enforce the clause. *Id.*

The Court finds that the forum selection clause at issue here is mandatory. "A mandatory forum selection clause contains 'clear language showing that jurisdiction is appropriate only in the designated forum.'" *Melo*, 439 F. Supp. 3d at 700 (quoting *Garrett v. Gulf Stream Coach, Inc.*, No. CIV. A. 3:08CV792, 2009 WL 936297, at *2 (E.D. Va. Apr. 7, 2009)); *see also Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650-51 (4th Cir. 2010) (explaining that courts will interpret a forum selection clause that contains "specific language of exclusion" as mandatory and excluding venue elsewhere). By contrast, a permissive forum selection clause authorizes parties to bring suit in certain venues but does not prohibit litigation elsewhere. *Id.* (citing *Abermarle Corp.*, 628 F.3d at 650-51). "A crucial distinction between a mandatory clause and a permissive clause is whether the clause only mentions jurisdiction or specifically refers to venue." *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 436 (W.D.N.C. 2008) (internal quotations omitted). This Court has further advised that language such as "shall," "only," or "exclusive" indicates that a forum selection clause is mandatory. *See e.g.*, *Melo*, 439 F. Supp. 3d at 701; *Unistaff, Inc. v. Koosharem Corp.*, 667 F. Supp. 2d 616, 619 (E.D. Va. 2009).

Here, the forum selection clause refers to venue and employs the term "shall" when specifying the venue for dispute resolution of particular types claims. Dkt. 5-1 ¶ 7 ("The Member consents to the forum selection . . . and *venue* provisions described above." (emphasis added)); *id.* ("Any action or proceeding arising directly or indirectly out of a vehicle bid or purchase transaction *shall* be conducted in the state/province and county where the vehicle was located at the time the bid was entered or the purchase was consummated . . . ." (emphasis added)). Consequently, the Court finds that the Member Terms and Conditions contain a mandatory forum selection clause.

Next, the Court turns to the question of whether enforcement of the forum selection clause at issue here would be unreasonable. First, the Court finds no evidence that Defendant Copart forced Plaintiff to agree to the Member Terms and Conditions, or the forum selection clause specifically, by fraud or overreaching.

Second, the Court concludes that the forum selection clause will not result in grave inconvenience to Plaintiff if enforced. Even if litigating this dispute in South Carolina would impose a financial and logistical burden on Plaintiff, federal courts have consistently held that "a party seeking to avoid a forum selection clause must prove more than the inconvenience of litigating in a distant forum." *Melo*, 439 F. Supp. 3d at 701 (quoting *Price v. Leasecomm Corp.*, No. 1:03CV685, 2004 WL 727028, at *4 (M.D.N.C. March 31, 2004)); *see also Carnival Cruise Lines*, 499 U.S. at 595 (finding that forcing parties who lived in Washington state to litigate their claims in Florida, where no events relevant to their claims occurred, did not rise to the level of a grave inconvenience or unfairness); *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991) (noting that the cost of transporting witnesses is not enough to render a forum selection clause unenforceable); *The Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 613 (E.D. Va.

2008) (concluding that the plaintiff, a Virginia corporation, having to transport witnesses to a forum in Illinois did not constitute a grave inconvenience).

Third, the Court finds that litigating this case in the United States District Court for the District of South Carolina would not be so fundamentally unfair as to deprive Plaintiff of a remedy. The Forum Selection Clause, in addition to requiring any claims to be brought in the state and county where the subject vehicle was located at the time of purchase, further requires the application of that state's substantive laws. *See* Dkt. 5-1 ¶ 7. In the instant case, Plaintiff asserts two claims—the first pursuant to Virginia Code § 8.2-716, which requires that "[s]pecific performance may be decreed where the goods are unique or in other proper circumstances," and the second pursuant to Virginia Code § 8.2-328, which governs sales by auction. *See* Dkt. 1-1 ¶¶ 29-42. Plaintiff does not contend that it would be deprived of a remedy if a court applies South Carolina law to its claims instead of Virginia law. In fact, both of the statutes that Plaintiff has brought suit under were adopted from the Uniform Commercial Code ("UCC"), and the South Carolina legislature has adopted analogous statutes from the UCC. *See* S.C. Code §§ 36-2-716 and 36-2-328. Accordingly, Plaintiff will be able to assert largely identical claims under South Carolina law.

Fourth, enforcement of the forum selection clause will not contravene a strong public policy of Virginia. The Fourth Circuit has enforced a forum selection clause even where the contracted forum was England and English law was arguably at odds with certain United States securities laws. *Lloyd's of London*, 94 F.3d at 928-32. Here, Plaintiff has not identified any practices of the South Carolina courts that would offend the public policy of Virginia. This finding, together with the lack of evidence of fraud or overreaching, grave inconvenience, or fundamental

unfairness of South Carolina law, compels this Court to enforce the forum selection clause in the Member Terms and Conditions.

### C. Transfer Under § 1406(a)

Finally, we turn to the issue of whether this Court should transfer the instant action to the United States District Court for the District of South Carolina, even if dismissal for improper venue is appropriate. Because the forum selection clause renders venue improper in this Court, 28 U.S.C. § 1406(a) governs this inquiry. *The Hipage Co.*, 589 F. Supp. 2d at 613. Section 1406(a) provides in pertinent part that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or *if it be in the interest of justice, transfer* such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added). The Supreme Court has instructed that the "interest of justice" requires "removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962). In *Goldlawr*, the Supreme Court noted that a potential forfeiture of a plaintiff's causes of action, such as by the expiration of a statute of limitations, is the quintessential "example of the problem sought to be avoided" when transferring under § 1406(a). 369 U.S. at 466.

However, in the instant case, there does not appear to be an applicable statute of limitations or any other comparable barrier hindering Plaintiff's ability to bring suit against Defendants in the United States District Court for the District of South Carolina. Accordingly, transfer is not appropriate. *See The Hipage Co.*, 589 F. Supp. 2d at 614 (declining to transfer the case because the plaintiff did not face a statute of limitations nor forfeiture of its rights by any other means).

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. 4) is GRANTED; and it is

FURTHER ORDERED that the instant action is DISMISSED for improper venue.

The Clerk is directed to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
January 5, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge